United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,

v.

Rheanna Rose Salyer,

    Defendant.

_____/

Hon. David M. Lawson

Case No. 2:22-cr-20143

# The United States of America's
# Sentencing Memorandum

Salyer repeatedly created images of herself sexually exploiting a five-month-old child, including penetrating the infant's anus with her finger, urinating on the infant, pressing her vagina against the infant's penis, performing oral sex on the infant, and sticking the infant's arm in her vagina. (PSR ¶ 17). She then distributed those images to satisfy the sexual desire of other pedophiles. (PSR ¶ 20b). Salyer was supposed to love and care for her infant victim; instead, she committed these atrocious acts. If an undercover law enforcement employee had not discovered her behavior, there is no telling what more she could have done. Salyer was willing, and in fact eager, to cause even greater harm

to the infant. She also collected and distributed other child pornography and exploited another minor victim to create a sexually explicit image. Salyer's guideline range and the maximum possible sentence under her plea agreement are 50 years' imprisonment. There is nothing about Salyer's actions to indicate that a sentence less than that is appropriate.

## I. Salyer Committed Horrific and Unthinkable Offenses

One factor the Court considers when imposing a sentence is the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). The offenses that Salyer committed are among the most serious an individual can commit. She brutally violated a five-month-old infant, engaging in behavior so horrific and disgusting that it is impossible to find words that can adequately express how truly awful it was.

### A. Salyer's communications with the undercover led to a search warrant on her residence and the discovery of her abuse.

This case arose because Salyer, who was very active online discussing her sexual fantasies and sharing child pornography, met an undercover law enforcement employee on an internet application. In January 2022, she first told the undercover that she let the infant "lick

juices off her fingers" and that she had performed oral sex on the infant. (R. 1, Pg.ID 4). She sent an image of the infant's arm inside her vagina to the undercover on February 23, 2022. (PSR ¶ 12). During that same chat, she expressed a desire to travel to meet the undercover employee to engage in sexual acts with the infant and the undercover employee, telling the undercover employee she wanted to see the infant sexually abused and that she wanted to perform oral sex on the infant while the undercover performed a sex act on her. (PSR ¶ 13).

### B. Agents execute a search warrant and Salyer makes partial admissions.

IP Address and other information led law enforcement to Salyer's residence. Agents in Detroit received the information on February 24, 2022, and executed a search warrant as soon as possible to prevent further abuse. Agents performed an on-scene review of her phone and discovered that less than four hours before they entered her residence, Salyer created an image of herself performing oral sex on the infant and distributed it to another person. (R. 1, Pg.ID 7). When questioned, Salyer admitted to sending another image of child pornography to a different individual. Salyer also admitted to using Kik and other

applications to contact other individuals about sexual fetishes. (PSR ¶ 14). She denied having the infant's arm in her vagina and claimed it was a doll. (PSR ¶ 14). This was a lie.

### C. Analysis of Salyer's phone leads to full extent of her abuse and depravity.

Agents analyzed Salyer's phone and found numerous images that she created of herself with the infant. The PSR outlines those, which include "multiple images of SALYER's vagina near MV1's face, an image of SALYER urinating on MV1, multiple images of SALYER performing oral sex on MV1, an image of SALYER digitally penetrating MV1's anus, a photo of SALYER holding MV1's penis, and a photo of SALYER's vagina pressed to MV1's penis." (PSR ¶ 17).

Agents also discovered an image of another minor that Salyer had used to create a sexually explicit image, a young child that she babysat for previously. (PSR ¶ 18).

Beyond those two victims, agents also observed child pornography that Salyer possessed on her phone. These images included the following:

| Category | Images | Unique | Video |
|---|---|---|---|
| Child Abuse Material (CAM) - Illegal | 74 | 74 | 11 |
| Child Exploitive (non-CAM) / Age Difficult | 25 | 25 | 2 |
| CGI / Animation - Child Exploitive | 10 | 10 | 0 |
| Comparison Images | 38 | 38 | 0 |
| Total | 147 | 147 | 13 |

(Bates 212). These images included sadistic images. (PSR ¶ 19).

A full forensic analysis of Salyer's phone also demonstrated that Salyer was in contact with numerous people on multiple social media platforms. She appeared to often use a particular platform which has a higher degree of anonymity than others.

Salyer's conversations indicated that she engaged in hands-on offending in the past in discussions that she had with other users:

```
---------------------------
From: fukeveryonee_8j0@talk.kik.com Rose S (owner)
Timestamp: 1/10/2022 3:48:31 PM(UTC+0)
Source App: Kik Messenger
Body:
Son and he's 4 months
Its been a couple years I used to watch ▓▓▓▓▓▓▓▓▓▓ nd loved to eat them up
---------------------------
From: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Timestamp: 1/10/2022 3:49:27 PM(UTC+0)
Source App: Kik Messenger
Body:
Mmmm that's hot ! How old were they. I did a lot with mine when she was young , now I have to creep a bit when she sleeps
---------------------------
From: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Timestamp: 1/10/2022 3:50:01 PM(UTC+0)
Source App: Kik Messenger
Body:
One was 6 months the other was like almost 2
---------------------------
```

(Bates 320). Salyer also discussed her desire to watch another person sexually assault the infant:

```
Timestamp: 2/24/2022 1:52:53 AM(UTC+0)
Source App: Wickr
Body:
Oh yeah? Would be nice to plan a trip in the future so I can give him a taste of my cock. Pay him back for what he d         with a good pounding
----------------------------
From: fukeveryonee (owner)
Timestamp: 2/24/2022 1:53:07 AM(UTC+0)
Source App: Wickr
Body:
Mmm id love to watch that
----------------------------
```

(Bates 833). She also expressed excitement for another person who claimed to have sexually assaulted a child:

```
From: fukeveryonee (owner)
Timestamp: 2/23/2022 12:15:21 AM(UTC+0)
Source App: Wickr
Body:
How have u been anything fun
----------------------------
Timestamp: 2/23/2022 12:26:53 AM(UTC+0)
Source App: Wickr
Body:
Yes I got to lick her pussy over the weekend , she had some NyQuil and was out . Pulled panties to side and had some good licks , also rubbed my cock on her face and lips and shot a massive load on her .
----------------------------
From: fukeveryonee (owner)
Timestamp: 2/23/2022 12:27:16 AM(UTC+0)
Source App: Wickr
Body:
Damnnn that's awesome
```

(Bates 760). Salyer's communications with these other pedophiles enhance the already serious nature of this offense.

### D. These actions represent the most serious of possible offenses.

Salyer pleaded guilty to violating two statutes, one of which has a 15-year mandatory minimum sentence. Both offenses are themselves

inherently serious, but Salyer's acts are the most serious of violations of these statutes. She created sexually explicit images that went far beyond the lascivious exhibition of the infant's genitals. She created images of pain and humiliation. She distributed images that she created for the sexual enjoyment of other pedophiles. The only solace is that the infant will not remember the horrors that Salyer subjected him to.

Unfortunately, the internet will, as images of the infant's abuse will likely spread. The harm from Salyer's actions is immense and enduring. This child will have to grow up knowing what was done to him and knowing it was by someone who was supposed to love and care for him. He will never know how far the images of his abuse have spread.

Salyer exploited two children, celebrated the believed abuse of another, and contributed to the market for child pornography by both distributing images and collecting them for her personal use. Accordingly, this sentencing factor decisively and heavily favors an extraordinarily long sentence for Salyer.

## II. Salyer's Lack of Criminal Record is Offset by Her Uncontrolled Abuse of Children

The Court also considers Salyer's history and characteristics when fashioning a sentence. 18 U.S.C. § 3553(a)(1). Here, those favor a lengthy sentence given the weight the Court should give to her uncontrolled sexual attraction to children.

### A. Salyer's primary characteristic is her uncontrolled sexual attraction to children.

The primary characteristic for the Court's concern here is Salyer's overwhelming and uncontrolled sexual desire for children. Throughout her numerous chats with other like-minded individuals over multiple chat platforms, she expressed this interest. In one exchange, she told another user that her she has a particular desire for violent images of children being exploited:

```
---------------------------
From: fukeveryonee (owner)
Timestamp: 2/20/2022 3:30:25 AM(UTC+0)
Source App: Wickr
Body:
Under 8 for sure
I'm bi
I don't mind watching a women with a girl but haven't seen much of anything I like...
I like the fucked upness of a boy or girl getting used
```

(Bates 913). In another, she expresses her agreement with another user who suggests that pedophiles should reproduce together so that they can abuse their children sexually without having to do so in secret:

Page **8** of **16**

> Timestamp: 2/22/2022 5:47:06 AM(UTC+0)
> Source App: Wickr
> Body:
> It's better to be with a fellow pedo so you have have children together and fuck them without having to hide it like you would if you had kids with a non pedo
> ----------------------------
> From: fukeveryonee (owner)
> Timestamp: 2/22/2022 5:48:15 AM(UTC+0)
> Source App: Wickr
> Body:
> Agreed

(Bates 806). In another conversation, she lets another user know that she has nearly no limits when it comes to her sexual behavior:

> Timestamp: 12/22/2021 12:52:00 PM(UTC+0)
> Source App: Kik Messenger
> Body:
> What kind of taboos you into or ur limits if u have any
> ----------------------------
> From: fukeveryonee_8j0@talk.kik.com Rose S (owner)
> Timestamp: 12/24/2021 4:22:40 AM(UTC+0)
> Source App: Kik Messenger
> Body:
> Limits basically is blood
> ----------------------------
> From: fukeveryonee_8j0@talk.kik.com Rose S (owner)
> Timestamp: 12/24/2021 4:22:51 AM(UTC+0)
> Source App: Kik Messenger
> Body:
> I'm open to anything else really
> ----------------------------

(Bates 253). These conversations demonstrate the central characteristic that should concern the Court when fashioning a sentence, and is something that Salyer repeatedly acted upon when she had unfettered access to an infant.

### B. Salyer's gender should not play a role in the length of her sentence.

Salyer should not receive a lesser sentence because she is a woman. If this case involved a man committing these acts, any pleas for

sympathy or a lower sentence would likely fall upon deaf ears. Salyer will not appear before this Court in a physically imposing manner. She will not appear traditionally dangerous. But she is incredibly so. She has caused immense harm and the nature of her offense requires neither size nor strength to offend again. There is nothing to differentiate her between male offenders who would receive a significant sentence for this behavior.

Courts have largely provided significant sentences for this behavior committed by women. Below is a list of selected cases throughout the nation involving female offenders with facts involving production of child pornography:

| Case | Number | District | Sentence |
|---|---|---|---|
| US v. Thommie-Lyn Stansky | 21-cr-10068 | Kansas | 60 years |
| US v. King | 19-cr-89 | Northern District of Floria | 276 months |
| US v. Shannon Bobrosky | 7:17-cr-23 | Western District of Virginia | 30 years and lifetime supervision |
| US v Sluder | 21-cr-49 | Eastern District of Tennessee | 30 years |
| US v. Coffey | 3:20-CR-57 | Eastern District of Tennessee | 262 months |

| | | | |
|---|---|---|---|
| US v. Julia Morris | 4:15-cr-011 | Southern District of Texas | 204 months |
| US v. Amber Talley | 1:19-cr-00299 | Southern District of Indiana | 40 years |
| US v. Tangie Totten | 4:19-cr-00019 | Southern District of Indiana | 40 years |
| US v. Jessica Wilson | 2:21-cr-56(2) | Southern District of Ohio | 20 years |
| US v. Dawn Greenwood | 3:19-cr-262-N | Northern District of Texas | 30 years |
| US v. Miranda Lynn Dotson | 1:19-cr-120 | Western District of North Carolina | 210 months |
| US v. Christine Shook | 2:19-CR-28-2 | Northern District of West Virgina | 20 years |
| US v. Hubbard | 7:19-CR-219 | Western District of Texas | 40 years |
| US v. Hollingsworth | 2:10-cr-20766 | Eastern District of Michigan | 180 months |
| US v. Ford | 3:10-cr-199 | District of Oregon | 552 months |
| US v. Eyerly | 4:11-cr-809 | Southern District of Texas | 300 months |
| US v. Hilliard | 2:13-cr-36 | Northern District of Illinois | 288 months |
| US v. Merrell | 1:14-cr-358 | District of Minnesota | 240 months |
| US v. Knudsen | 3:14-cr-355 | District of Oregon | 300 months |

| US v. Edge | 1:14-cr-201 | District of Minnesota | 10 years |
|---|---|---|---|
| US v. Boyle | 2:15-cr-20741 | Eastern District of Michigan | 30 years |
| US v. Rascoe | 2:15-cr-20198 | Eastern District of Michigan | 78 months |
| US v. Boselli | 8:16-cr-517 | Middle District of Florida | 40 years |
| US v. Germain | 4:17-cr-00003 | District of Alaska | 264 months |

For some of those that received lesser sentences, they were not sexually interested in children themselves and engaged in the behavior to please a boyfriend or husband. That was not the case with Salyer. She hid the commission of these acts from her husband, who had no interest in children. She has a demonstrated sexual interest in children and no regard for the harm she causes to others.

C. **Other characteristics that would otherwise favor a lower sentence have less relevance.**

Salyer was employed at the time of her arrest. (PSR ¶ 70). She graduated high school and continued with some college education. (PSR ¶ 69). She has no prior criminal history. (PSR ¶¶ 55-60). Her substance abuse history is minimal and unremarkable. (PSR ¶ 68). These are factors that often result in a lower sentence for offenders. But that should not result in a lower sentence here because beneath the veneer

of her relatively pro-social exterior was the horrific actions that she took in this case. The characteristics that caused her to commit this offense make her other, more positive characteristics should hold little weight for this Court.

### D. Salyer's alleged history of prior sexual abuse should not result in a lower sentence.

Finally, Salyer's allegations of prior sexual abuse should not cause the Court to impose a lower sentence. There is a pervasive misbelief that being a victim of sexual abuse causes someone to become a perpetrator themselves. There is no question that victims of childhood sexual abuse have higher rates of violent offenses and substance abuse later in life. *See* [https://www.d2l.org/wp-content/uploads/2017/01/Statistics_5_Consequences.pdf](https://www.d2l.org/wp-content/uploads/2017/01/Statistics_5_Consequences.pdf). But far too often in the search for answers as to why some do the unthinkable, there is a desire to form too strong a correlation between prior victimization and offending against children. Some studies have shown that abusers often make up claims of prior abuse for sympathy, and the strength of the correlation between prior victimization and offending is a matter of some debate. *See* Anna C. Salter, Predators: Pedophiles

Rapists and Other Sex Offenders, 72-73 (2003). Regardless of whether a correlation exists, the vast majority of those who are sexually abused as children do not go on to abuse others. https://livingwell.org.au/managing-difficulties/addressing-the-victim-to-offender-cycle/. The focus now must be on protecting others from Salyer and not Salyer's childhood. Salyer has demonstrated that she will relentlessly abuse children, necessitating a substantial sentence in this case in order to keep the children of this community safe for as long as possible.

### III. There is a Strong Need to Protect the Public from Salyer, Reflect the Serious Nature of the Offense, and Punish Salyer

The Court also considers various other factors outlined in 18 U.S.C. § 3553, including the need to deter Salyer and others from committing similar crimes in the future, the need to protect the public from Salyer, for the sentence to reflect the seriousness of the offense, and to provide just punishment. 18 U.S.C. § 3553(a)(2)(A-C). Here, those factors favor a long sentence. There is a clear need to protect the public from an individual who would take the most helpless and defenseless amongst us and use him for her sexual pleasure. A sentence

close to the mandatory minimum fails to account for the severity and inhumanity of Salyer's behavior and does not adequately punish her for her acts. Only a very lengthy sentence can accomplish those goals.

## IV. Conclusion

Salyer's offenses were incredibly serious and will result in lasting harm to those she victimized. Her repeated abuse of a child that she was supposed to care for and love demands a significant sentence. There is little mitigating about these offenses, as they contain every manner in which one can exploit children---hands-on abuse, production of sexually explicit images using minors, distribution of those images, and downloading child sexually abusive material. The Court should sentence her accordingly.

                                                  Respectfully submitted,

                                                  DAWN N. ISON
                                                  United States Attorney

                                                 *s/Christopher W. Rawsthorne*
                                                 CHRISTOPHER W. RAWSTHORNE
                                                 Assistant United States Attorney
                                                 211 West Fort Street, Suite 2001
                                                 Detroit, Michigan 48226
                                                 (313) 226-9160
                                                 christopher.rawsthorne@usdoj.gov

Date: May 2, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2023, I electronically filed the foregoing document for the government with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system, which will send notification of such filing to all users of record via electronic mail.

<i>s/Christopher W. Rawsthorne</i><br>
CHRISTOPHER W. RAWSTHORNE<br>
Assistant United States Attorney